## Thomas v. Crawford County Commissioners (No. 2)

*John D. Petruso,* for appellant.
*Robert B. Dornhoffer,* for the Board.
*R. Charles Thomas,* for Linda Porter.

ROWLEY, *J.,* Specially Presiding, December 2, 1976 — This appeal by the Honorable P. Richard Thomas, President Judge of the Court of Common Pleas of Crawford County (appellant), pursuant to section 7 of the Local Agency Law (the law), Act of December 2, 1968, P.L. 1133, 53 P.S. §§11301-11311, from a Final Adjudication of the Board of County Commissioners of Crawford County (Commissioners), presents the questions (1)

whether a decision by the President Judge of a Court of Common Pleas to terminate the employment of a clerk-secretary in the court's Adult Probation Department is subject to the hearing provisions of the Local Agency Law, and (2) if so, whether the employe is entitled to be paid compensation from the time she was discharged until a hearing was concluded three and one-half months later, at which time it was determined that "just cause" existed for her dismissal. We have concluded that such a determination is not subject to the provisions of the Local Agency Law and, in the alternative, that if the decision to discharge the employe is subject to those provisions, the employe is not entitled to compensation when it is finally determined that her discharge was warranted.

The record in this case discloses that Mrs. Linda Porter was hired by the Court of Common Pleas of Crawford County, on September 9, 1971, as a clerk-secretary in the Adult Probation Office. For a time Mrs. Porter performed her duties efficiently and was considered a good employe. However, during the winter, spring and summer of 1974, her work performance deteriorated and finally, on September 3, 1974, by direction of Judge Thomas, Mrs. Porter was dismissed. Subsequently, Mrs. Porter demanded a hearing in accordance with the provisions of the Local Agency Law. Although Judge Thomas took the position that she was not entitled to such a hearing, the Commissioners established themselves as the local agency[1] and held the hear-

1. The parties have not raised an issue as to whether, if the law is applicable, the Commissioners are the appropriate local agency to conduct the hearing. Since it has not been raised as an issue we have not considered it and express no opinion, in this case, on that question.

ing requested by Mrs. Porter. The hearing commenced on November 6, 1974, and the fourth and final session was held on December 12, 1974. The transcript of that hearing, which was certified to us on or about March 4, 1976, contains in excess of 700 pages. On December 13, 1974, the Commissioners filed a Final Adjudication in which they concluded (1) that Judge Thomas had "the authority to hire and fire personnel" in the probation office, (2) that "just cause" existed for Mrs. Porter's dismissal, and (3) that "[h]er continued presence in said office would be detrimental to the smooth functioning of said office." In this regard the Commissioners found the following facts justified Mrs. Porter's dismissal:

"Violations of the confidentiality of office records and reports and her refusal to fully report the facts and reasons for these violations to her superiors.

"Lack of diligence and industriousness in her work for and during a term of several months prior to September 3, 1974.

"Lack of propriety and decorum in an office which by its very nature of function demands such qualities of its staff."

The Commissioners, however, also concluded that Judge Thomas' dismissal of Mrs. Porter on September 3, 1974 was an Adjudication within the meaning of the Local Agency Law and was, therefore, "invalid" because she had not been provided with a hearing prior to her dismissal. The Commissioners then terminated Mrs. Porter's employment in the probation office effective December 16, 1974, and ordered that she be paid compensation from September 3, 1974 to December 16, 1974, although she had not worked during that period of time.

Judge Thomas filed an appeal[2] from the Commissioners' determination (1) that his firing of Mrs. Porter was "invalid," (2) that she was entitled to a hearing under the provisions of the Local Agency Law, and (3) that she was entitled to be paid compensation for the period of time from September 3, 1974 to December 16, 1974. Mrs. Porter did not appeal the Commissioners' Adjudication. Eventually, the record of the proceedings before the Commissioners was certified to the court[3] in order that a hearing might be held. At the hearing before the court, the case was argued orally by counsel for Judge Thomas, the Commissioners and Mrs. Porter. In addition, written briefs were filed by counsel for Judge Thomas and the Commissioners. Counsel for Mrs. Porter joined in the Commissioners' brief.

At the outset, it is important to note that this case does *not* involve a dispute between the Commissioners of Crawford County and the Court of Common Pleas of Crawford County as to who has the right to hire, discharge, or otherwise supervise employes in the court's probation department. As already indicated, the Commissioners, in their Adjudication, determined that Judge Thomas had the

2. Both Mrs. Porter and the county filed motions to quash the appeal, on the ground, inter alia, that Judge Thomas had no "standing" to appeal the Commissioners' Adjudication. In an opinion and order filed July 25, 1975, 3 D. & C. 3d 566, we held that Judge Thomas did have the requisite standing and denied the appellees' motions. Since then, the opinion of the Supreme Court in Wm. Penn Parking Garage, Inc. v. Pittsburgh, 464 Pa. 168, 346 A. 2d 269 (1975), was filed on October 3, 1975 and in our opinion it strengthens the conclusion we reached in that regard. See Opinion of Mr. Justice Roberts at p. 182.

3. On February 26, 1975, the Pennsylvania Supreme Court specially assigned the writer of this opinion "to hear and determine the matter."

authority to hire and fire personnel in the probation department. Moreover, in the written brief filed with the court, the Commissioners' counsel specifically states that the county makes no claim that either Mrs. Porter or "other court-related employes" could only be discharged by the Commissioners or with their "acquiescence or intervention." The Commissioners and Mrs. Porter do contend, however, that the court's decision to discharge such an employe is subject to the restrictions contained in the Local Agency Law.[4]

The scope of review assigned to the court, by the legislature, on such an appeal was set forth by Judge Mencer for the Commonwealth Court in Gabriel v. Trinity Area School District, 22 Pa. Commonwealth Ct. 620, 623, 350 A. 2d 203 (1976), as follows: "Our scope of review in these cases is limited by Section 8(b) of the Local Agency Law (53 P.S. §11308(b)). We are required to affirm the action of the local agency unless we find a violation of appellant's constitutional rights, an *error of law* or manifest abuse of discretion by the local agency, or that any necessary finding of fact made by the agency is not supported by substantial evidence." (Emphasis supplied.)

Also in Springfield School District v. Shellem, 16 Pa. Commonwealth Ct. 306, 312, 328 A. 2d 535 (1974), the court said: "Even if the lower court, on an appeal under the Local Agency Law, 53 P.S. §11301 et seq., determines the existence of a violation of a constitutional right, or an abuse of discretion, or an error of law, where there is a full and

4. The parties have not challenged the constitutionality of the law if it is determined to be applicable in this case. We have had no need to consider that question ourselves in view of our determination that the law is not applicable.

complete record, that court can only set aside or modify the order of the local agency or remand the case. The determination by the court of errors in the record does not mean necessarily that the record is not full and complete. We can find no legislative intent that a court of common pleas in a case such as this should substitute its judgment for that of the local agency."

While we have no desire in this case to substitute our judgment for that of the County Commission-ers, we are of the opinion that they did commit an error of law when they concluded that Judge Thomas' decision to discharge Mrs. Porter was subject to the provisions of the Local Agency Law.

## I. APPLICATION OF LOCAL AGENCY LAW

A careful examination of the Local Agency Law discloses that the legislature provided for two separate and distinct proceedings. The first stage proceeding provides a party whose personal or property rights are affected by the determination or decision of a local agency certain rights *"before [the] local agency."* §§2(3) and 3. These rights include reasonable notice, a hearing which includes the right to cross-examine witnesses and to present evidence, the right to be represented, a record of the proceedings and a written decision: §§3-6. The second stage proceeding is an appeal from the local agency's decision or determination to the Court of Common Pleas: §§7 and 8. The issues before us at this time, of course, require a construction and interpretation of the scope of the first stage "rights" and an attempt to ascertain the legislature's intention in this regard.

The legislative focus of the first stage proceeding is not on "who" is entitled to the rights extended

therein, but rather, it appears to us, to be on what, and *whose,* decisions (Adjudications) trigger the operative provisions of the first stage proceedings. It is only when a decision or determination is made by a local agency, as that term has been defined by the legislature, that the provisions of the act become operative. For example, the act is not applicable to decisions, made by a local merchant or a local union, that may affect an individual's personal or property rights. On the other hand, *"any* person" whose personal or property rights are affected by a local agency's adjudication is entitled to the benefits of the law. Therefore, the question that must be determined is not whether Mrs. Porter, because of her status as an employe, is entitled to a hearing. The proper question is whether Judge Thomas' decision to discharge Mrs. Porter was a decision by a local agency as that term is used in the law. In section 2(2) of the law, 53 P.S. §11302(2), the legislature defined the term "Local Agency" but then went on to provide that it *"shall not include a court of record,* a magistrate, alderman, [or] justice of the peace. . . ." (Emphasis supplied.)

Unfortunately a study of the legislative history of the law discloses that there was no debate or discussion on the floor of either house of the General Assembly during the passage of this statute. Therefore, in ascertaining and effectuating the General Assembly's intent in excluding "court[s] of record" from the definition of local agencies we must turn to the Statutory Construction Act of December 6, 1972, P. L. 1339, sec. 3, 1 Pa.C.S.A. §1501 et seq. Section 1921(b) of the Statutory Construction Act provides that: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." In our opinion the above quoted words of

the statute exempting courts of record from the definition of local agency are unambiguous and explicit. It is conceded, as it must be, that the Court of Common Pleas of Crawford County is a court of record as that phrase is understood according to its common and approved usage. Therefore, we are compelled to follow the letter of the law as written.

The Commissioners and Mrs. Porter, however, argue that the exclusion of courts of record from the definition of local agency, applies only to actions by the court in its judicial capacity and does not exclude decisions of the court when it is acting in an administrative capacity. They refer to the exclusionary clause contained in the definition of Adjudication in section 2(1) of the law in support of their argument. That clause excludes from the term Adjudication, "any final order, decree, decision, determination or ruling based upon a proceeding *before a court*, . . . " That language, argue the appellees, evidences an intention on the part of the legislature to restrict its exclusion of "court[s] of record" from the definition of local agencies found in section 2(2) of the law. Such an argument, while ingenious, disregards the clear and unambiguous meaning of the words used by the legislature in section 2(2). This, as we have seen, we may not do. As indicated by Mr. Justice Blackmun in his concurring opinion in United States v. MacCollom, 426 U.S. 317 (1976), it is not an appropriate function of this court to rewrite the legislature's clear and explicit direction in order to obtain what may be regarded by many as sound policy. Certainly the members of the General Assembly are aware that the courts exercise and possess many duties, responsibilities and powers that are said to be non-judicial. Had it intended to limit its exclusion of

courts of record to those cases where the court acts in a judicial capacity, it could and, in our opinion, would have clearly said so. In addition, it should be noted that in section 2(1) the legislature used the term "court," whereas in section 2(2) the phrase "court of record" was used. The two terms are not synonomous or interchangeable. Therefore, the inference claimed by appellees is not warranted by the clear and unambiguous words of the statute.

Moreover, the construction urged by the appellees in this case would create a great deal of uncertainty and confusion. For example, if the court were to limit the legislature's exclusion of courts of record as proposed by appellees, a serious question might arise in many instances as to precisely what decisions or determinations are to be excluded from the provisions of the Local Agency Law and which are not. For example, would an order of the court excusing a potential juror from service as a juror be subject to the requirements of the law? Would the court's appointment of certain individuals to its Board of Viewers—or dismissing individuals from that board—be subject to the provisions of the law? Section 1922(2) of the Statutory Construction Act provides that we are to presume that the General Assembly intended the statute to be certain. We cannot presume that the legislature intended to create the confusion that will occur if appellees' construction is adopted.

Appellees also argue, in essence, that it is unfair to hold that some employes in the courthouse have the right to a hearing under the law, but that others do not. A proper resolution of that contention, in our opinion, is that the question of which decisions and determinations are, and which are not, covered by or subject to the provisions of the law is a legislative

matter. It is an issue that should be determined in the halls of the legislature after deliberative study and debate. It is not, in our opinion, a judicial function. In short, we are of the opinion that to construe the exclusion as urged by the appellees would constitute a rewriting of the statute and a usurpation of the legislative function vested by our Constitution in the legislature. This we do not choose to do. Statutes, when constitutional, should be applied as written by the people's elected representatives. If changes are wise or desirable they should be made by the authors of the law and not by a judge or group of judges.[5] For these reasons we hold that Judge Thomas' decision to discharge Mrs. Porter was not a determination or Adjudication by a local agency within the meaning of the Local Agency Law as it is presently written, and, therefore, Mrs. Porter was not entitled to a hearing concerning her discharge.

## II.  PAYMENT OF COMPENSATION

Although our resolution of the first question would constitute a final determination of the appeal before us, we are of the opinion that the appeal must be sustained even if it were to be concluded that Judge Thomas' firing of Mrs. Porter was subject to the provisions of the Local Agency Law. In this regard, the Commissioners determined that not only was Judge Thomas' action subject to the requirements of the law, thereby entitling Mrs. Porter to a hearing, but that that hearing must be held prior to her discharge or termintion. We are of the

---

5. For an illuminating discussion of the principle that courts should *not* assume tasks that, under our constitutional system, belong to others, see Adams, Judicial Restraint, the Best Medicine, 60 Judicature 179 (November 1976).

opinion that this conclusion likewise constitutes an error of law.

Initially we note that in Bishop v. Wood, 426 U.S. 341 (1976), the United States Supreme Court rejected the contention of a police officer, who "held his position at the will and pleasure of the city," that he had a constitutional right to a pre-termination hearing. Thus, the question before us presently is whether the Local Agency Law itself provides Mrs. Porter with the right to a *pre*-termination hearing. Section 4 of the law provides that "[n]o adjudication shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." The law does not say, however, whether that hearing must be prior or subsequent to the Adjudication. In section 1922 of the Statutory Construction Act the legislature has directed that in ascertaining the intention of the General Assembly, we are to presume that it did not intend an absurd or unreasonable result. In our opinion, a review of the record in this case discloses that to require that the hearing afforded by section 4 precede the Adjudication would be unreasonable.

The record in this case more than amply supports the Commissioners' findings which in turn support the conclusion that justification existed for the discharge of Linda Porter. Mrs. Porter was hired on September 9, 1971, as a secretary in the Adult Probation Department of Crawford County. During the last three, four or five months prior to her termination, she began devoting her working hours to personal matters. She composed and typed poetry, read books and newspapers, and on occasions ate her lunch after using her lunch hour for personal activities. As a result of Mrs. Porter's conduct, the office work became delinquent. During the latter

part of that period, she, on occasion, refused to do work when directed or requested to by probation officers in the office. Some of the work that was performed by Mrs. Porter during this period had errors which had not been noticed or corrected by proofreading. Her attitude, conduct and work was described by Probation Officer James Douglas, at the hearing on December 12, 1974, as follows: "I mentioned that she had been irritable at work and very moody. One day happy, the next day sad. When given orders sometimes she had a very short fuse and she would fire back. Her work started to pile up which was, as I said, for me, very unusual because whatever I asked she did it. It just started to pile up. She deteriorated as far as relationship with me."

Mrs. Porter also suggested to other employes that they should not be so efficient because their employer would come to expect such quality of work from them. In addition, Mrs. Porter's conduct and activities with those having business in the Probation Department was at times so personal and unbecoming an employe in a public office, that it embarrassed her fellow employes, as well as those visiting the office.

Of even more serious consequence, however, than the foregoing, is the fact that Mrs. Porter was the source, on at least one occasion, of a serious leak of confidential information from the Probation Office against the express direction and instruction of one of the probation officers. Mrs. Porter, although instructed by the probation officer, who had prepared a pre-sentence report, not to divulge its contents to anyone, delivered the file and information contained therein to a state police officer who was at that time working on another case. It also appeared that in the summer prior to her discharge,

Mrs. Porter made various attempts to obtain a Juvenile Department file which was not needed by her or anyone in the Adult Probation Department. Upon being questioned about her efforts to obtain the file, she replied that they were personal and she would not discuss them with anyone. Mrs. Porter was finally discharged because of the culmination of her conduct in failing or refusing to do work that was assigned, in pursuing her own personal interests during working hours, in conducting herself in an unbecoming manner with other employes and with those having business in the Probation Office, and breaching the strict requirement of confidentiality which was required of much of the information and material contained in the Probation Department.

In light of Mrs. Porter's conduct, it seems extremely unreasonable to us to insist that she be maintained on the county payroll and paid by taxpayers' hard-earned money for attending to her own personal business, disrupting the orderly procedures of the Probation Department and leaking confidential information while a hearing can be conducted, concluded and a decision filed. It is to be noted that the hearing in this case was conducted in four sessions over a period of approximately five weeks. We can think of no valid or just reason why an employe whose conduct has deteriorated to the condition described in this record should be paid for an additional fifteen weeks, after a determination is made to discharge that employe. Such a payment would be an unreasonable misuse of the taxpayers' funds.

In Zimmerman v., City of Johnstown, 27 Pa. Commonwealth Ct. 42, 365 A. 2d 696 (1976), the court declined to hold that a local agency hearing

must precede the ten-day suspension of a police officer under The Third Class City Code of June 23, 1931, P.L. 932, as amended, 53 P.S. §35101. The court held that the hearing may follow the suspension provided a hearing, when sought, is granted within a reasonable time. In Mrs. Porter's case the hearing was held within a reasonable time. That decision is consistent with prior similar holdings of the court. In Shellem v. Springfield School District, 6 Pa. Commonwealth Ct. 515, 297 A. 2d 182 (1972), plaintiff, in an action of mandamus, had been dismissed by defendant school board. The trial court determined that plaintiff was entitled to a hearing on remand relative to his dismissal. The trial court also concluded that plaintiff had not been provided with the required hearing to which he was entitled and ordered that he be reinstated and reimbursed for unpaid salary. On appeal, the Commonwealth Court reversed. The issue before the Commonwealth Court, as described by Judge Mencer, was "whether Shellem was provided the hearing to which he was legally entitled and whether the lower court should have remanded the case for the holding of a proper hearing rather than ordering Shellem's reinstatement as a substitute teacher." The Commonwealth Court concluded, as to the first question, that plaintiff had not been afforded the required hearing. However, as to the second issue, the court concluded that reinstatement with pay, pending such a hearing was not appropriate and that on the contrary, the case should be remanded for a proper hearing. Appellees argue that that case is inapplicable on the ground that it was decided under the provisions of the Public School Code of March 10, 1949, P.L. 30, 24 P.S. §1-101 et seq. However, it is to be noted that Judge

Mencer, in his opinion for the court, stated that plaintiff "was not afforded the hearing required by the Local Agency Law. . . ." pp. 519 and 520. It seems clear to us that if the Commonwealth Court was of the opinion that the Local Agency Law required a pre-termination hearing that they would have sustained plaintiff's reinstatement and payment of wages pending the required hearing. That they did not do so leaves the clear implication that an employe may be suspended or terminated prior to such hearing and if the termination is justified is not to collect compensation for the period following the termination. Likewise, in Commonwealth, Dept. of Education v. Oxford Area School District, 24 Pa. Commonwealth Ct. 421, 356 A. 2d 857 (1976), a teacher was dismissed by defendant school board. The teacher appealed from the action of the school board to the Secretary of Education who ordered defendant school district to reinstate the teacher as a professional employe and grant her a sabbatical leave of absence. An appeal was taken from the order of the Secretary of Education to the Commonwealth Court. The Commonwealth Court concluded that the school district had not strictly followed the statutorily prescribed procedure for dismissing a professional employe. The court, however, held that the Secretary had not properly ordered reinstatement and sabbatical leave. They held that "where procedural defects have occurred, the proper remedy is a remand for a proper procedural disposition." The court pointed out, in addition, that such a procedure was especially appropriate where the violation was a result of inadvertence. Certainly in the case before us, even if it should be determined that Mrs. Porter is entitled to a hearing, appellant's opinion that she was not enti-

tled to such a hearing is more than warranted by the explicit language of the Local Agency Law that excludes decisions of courts of record from its provisions. Therefore, we are of the opinion that the inference to be drawn from Shellem and the Oxford Area School District cases, and the cases cited therein, is that an employe who is discharged prior to a hearing has no right to be reinstated and paid for time not worked until a subsequent hearing determines that the firing was not justified or warranted. It is also interesting to note that the statute involved in the Oxford Area School District case provided that the hearing should be held *"before any professional employee . . . is dismissed . . . ."* (Emphasis supplied.) Thus, it is clear that when members of the General Assembly intend to make a hearing procedure a condition precedent to an employe's termination, they know exactly and precisely how to do so. The failure to use such explicit language in the Local Agency Law before us indicates to us that their intention was not to require a pre-termination hearing as claimed by the Commissioners and Mrs. Porter.

Moreover, this precise issue was raised in Hecknauer v. Coder, no. 75-0381, in the Court of Common Pleas of Lycoming County. President Judge Greevy of that court, in an unpublished opinion filed April 1, 1976, held that plaintiff, who was an employe at will, "was not entitled to a pre-termination hearing under the Pennsylvania Local Agency Law. . . ." The court granted defendant's motion for compulsory non-suit in plaintiff's mandamus action seeking reinstatement to his former position of zoning officer and administrator of the Bureau of Environmental Control and reimbursement of salary. With that conclusion we agree.

For these reasons we are of the opinion and hold

that the Commissioners committed errors of law in holding that Judge Thomas' dismissal of Mrs. Porter on September 3, 1974 was "invalid" and that she was entitled to compensation through December 15, 1974.

For these reasons, we make the order filed herewith.

## ORDER

Now, December 2, 1976, the appeal of President Judge P. Richard Thomas, of the Court of Common Pleas of Crawford County, is sustained. The conclusion of the Commissioners that Judge Thomas' firing of Mrs. Porter, on September 3, 1974, was not valid is reversed. The Adjudication of the Commissioners dated December 13, 1974, is modified by setting aside and striking therefrom the conclusion and direction that appellee, Linda Porter, be paid compensation without interest from September 3, 1974 to December 16, 1974. It is further directed that appellee, Linda Porter, not be paid compensation after September 3, 1974.